**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH STAMPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-2101-JAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Keith Stamper's ("Stamper") application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. For the reasons stated herein, the Court will reverse the decision of the Commissioner.

###    I.    Background

On December 13, 2011, Stamper protectively filed an application for SSI under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging disability beginning September 23, 2005.[1] (Tr. 147-52.) The Social Security Administration denied Stamper's claim on March 19, 2012. (Tr. 112.) Stamper filed a timely request for a hearing before an administrative law judge ("ALJ"). Following a hearing on September 20, 2013, the ALJ issued a written decision on April 29, 2014, upholding the denial of benefits. (Tr. 17-29.) Stamper then requested review of

---

[1] Stamper had previously filed for benefits in May 2007 (Tr. 95). That application having been denied, the only claim before the ALJ (and, correspondingly, presently before this Court) was Stamper's December 2011 application for SSI.

the ALJ's decision by the Appeals Council, which request was denied on October 31, 2014. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See <u>Sims v. Apfel</u>, 530 U.S. 103, 107 (2000).

Stamper filed this appeal on December 23, 2014. (Doc. No. 1.) The Commissioner filed an Answer. (Doc. No. 9.) Stamper filed a brief in support of his complaint (Doc. No. 11) and the Commissioner filed a brief in support of the answer. (Doc. No. 16.) Stamper filed a reply. (Doc. No. 17.)

## II.    Decision of the ALJ

The ALJ determined Stamper had not engaged in substantial gainful activity since December 12, 2011, the alleged onset date. (Tr. 22.) The ALJ found Stamper had the severe impairments of degenerative disc disease and photophobia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-23.)

After considering the entire record, the ALJ determined Stamper had the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations: Stamper is unable to climb ladders, ropes or scaffolds; he can only occasionally climb ramps or stairs, or stoop; he requires a sit/stand option every 30 minutes throughout the workday; he is unable to operate any foot controls; he must avoid concentrated exposure to extreme vibration and working at unprotected heights; and finally, he is limited to occupations that do not require work duties to be performed using sunlight or while looking directly into artificial lighting. (Tr. 23.) Based on written interrogatories submitted to a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Stamper can perform, such as document preparer, order clerk, or stem mounter. (Tr. 28.) Thus,

the ALJ concluded Stamper has not been under a disability from December 13, 2011, through the date of the decision. (Tr. 28.) Stamper appeals the ALJ's decision, arguing that the ALJ's evaluation is predicated on vocational expert testimony that conflicts with the Dictionary of Occupational Titles ("DOT"), which in turn produced an erroneous finding as to the jobs Stamper is able to perform.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on September 20, 2013. Stamper testified but was not represented by counsel. (Tr. 73.)

At the time of the hearing, Stamper was 48 years old and living with his brother and sister. (Tr. 78.) He is single and does not have children. Id. Stamper completed the twelfth grade in school and spent three years of his secondary education in special, vocational-focused classes. Id. at 79. He receives food stamps and is a participant in Missouri Health Net. Id. at 79-80. Although he has a driver license, Stamper estimates that he drives only once a month, or "once in a blue moon[.]" (Tr. 78.)

Prior to 2005, Stamper worked a plethora of manual labor-intensive jobs, including as a deckhand on tug boats. This work ceased in 2005 when Stamper sustained a back injury while on the job, although he never received workers' compensation benefits. Stamper testified that he suffers intense pain at the L3, L4, and occasionally L5 levels of his back. He has never been able to afford an operation for his back pain. The pain occasionally extends to Stamper's legs and feet. Stamper's pain requires him to move from standing to sitting on a regular basis, usually about every twenty minutes. He experiences muscle spasms if he does not switch from standing

to sitting on a regular basis. He experiences significant pain when he walks. (Tr. 83.) Stamper describes the pain as feeling like an electrical shock. (Tr. 85.)

Stamper also received a more recent injury to his eye when he collided with a tree branch. (Tr. 86.) After being diagnosed with inferior corneal laceration, Stamper received surgery to remove a sand particle and repair the eye. He is now far-sighted in the eye and, moreover, is very sensitive to light. Id. Stamper also manifested some suicidal ideations during the hearing, but has neither received ongoing treatment for mental health issues, nor does he argue in the instant action that he should be awarded disability benefits based on mental impairments.

Stamper testified that, due to his pain, he has not slept in a bed in some seven years, but instead sleeps in a reclining chair. Stamper cannot bend at the waist and therefore wears slip-on shoes. He can normally dress himself, although Stamper testified that his brother and friends have occasionally had to help because "sometimes I get real down[.]" (Tr. 84.) Stamper's brother and sister prepare his food and do Stamper's shopping using his food stamp card. (Tr. 89.) Stamper does not perform housework or yardwork. He states that his back "locks up" about once a month, which causes him to be "down for at least a week." (Tr. 87.) He testified that he "live[s] in pain 24 hours a day." (Tr. 89.)

**B.      Interrogatories Submitted to Vocational Expert**

In lieu of a vocational expert's live testimony at the hearing, the ALJ submitted interrogatories to vocational expert Jenifer Teixeira ("Teixeira"). (Tr. 234-240.) The interrogatories included the following hypothetical question:

> Assume a hypothetical individual who was born on October 1, 1965, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to

question #6. Assume further that this individual has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is unable to climb ladders, ropes or scaffolds, kneel, crouch or crawl but he can occasionally climb ramps or stairs and stoop. He requires a sit/stand option every 30 minutes throughout the eight-hour workday while remaining on task. He is unable to operate any foot control operations. He is to avoid concentrated exposure to extreme vibration and all operation control of moving machinery, working at unprotected heights, and the use of hazardous machinery. Lastly, he is limited to occupations that do not require work duties to be performed using sunlight, or while looking directly into artificial lighting.

(Tr. 235.) This hypothetical incorporates the limitations described in the ALJ's determination of Stamper's RFC.

Teixeira determined that such a person would be able to perform a job such as document preparer, Dictionary of Occupational Titles ("DOT") 249.587-018, SVP of 2, sedentary work. (Tr. 240.) Teixeira estimated 4,802 such jobs are being performed in the state of Missouri. Id. In addition, such a person could perform the job of order clerk, DOT 209.567-014, SVP of 2, sedentary work. Id. There are approximately 4,440 such jobs being performed in the state of Missouri. Id. Finally, Teixeira answered that such an individual could perform the job of stem mounter, DOT 725.684-014, SVP of 2, sedentary work, with some 10,540 such jobs being performed in the state of Missouri. Id.

Notably, Teixeira stated that "there are no conflicts between the occupational evidence that I have provided in reference to [what jobs are available] and the occupational information contained in the *Dictionary of Occupational Titles* and/or the SCO [that is, the Selected Characteristics of Occupations Defined]." Id.

### C.    Medical Records

The ALJ summarized Stamper's medical records at Tr. 23-27. Relevant medical records are discussed as part of the analysis.

### IV.    Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the

claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;

    (2) The education, background, work history, and age of the claimant;

    (3) The medical evidence given by the claimant's treating physicians;

    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

    (5) The corroboration by third parties of the claimant's physical impairment;

    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

    (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V.  Discussion

In his action for judicial review of the Commissioner's decision, Stamper raises a single issue. Stamper alleges the ALJ erred by relying on vocational expert testimony that was in conflict with the DOT and SCO, without explanation or justification from the vocational expert. The vocational expert opined that Stamper could perform the jobs of document preparer, order clerk, or stem mounter, and asserted that her testimony was not in conflict with the DOT definitions for those occupations.  However, the ALJ assigned limitations not mentioned or addressed in the DOT definitions for the occupations proposed by the vocational expert, namely those regarding ladders, ropes, ramps, stairs, foot controls, exposure to sunlight or artificial light, and a sit/stand option every 30 minutes throughout the eight-hour workday.  Stamper cites to Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014), a relatively recent Eighth Circuit case, for the proposition that a vocational expert's failure to explain inconsistencies between the DOT and/or the SCO and the vocational expert's proffered testimony is reversible error.

The Commissioner argues in response that "the DOT has its limits," (Doc. No. 16 at 7) and that the additional RFC limitations stipulated by the ALJ do not create a conflict between the vocational expert's testimony and the actual DOT definitions of the proposed-available jobs. The Commissioner explains that "generic DOT descriptions may not address each and every aspect of a particular job."  Id.  Finally, the Commissioner cites to Garrison v. Colvin, No. 4:13 CV 1203 DDN, 2014 WL 2452954 (E.D. Mo. June 2, 2014), and Harris v. Colvin, No. 4:14-CV-00031-NKL, 2014 WL 5781205, at *8 (W.D. Mo. Nov. 6, 2014), which the Commissioner asserts are analogous and which held that a vocational expert's failure to incorporate some hypothetical limitations did not amount to conflict with the DOT.  Upon review, the Court finds that here, the ALJ's failure to identify and accommodate (or resolve) the conflict between the

hypothetical posed to the vocational expert (and the vocational expert's resultant testimony) and the DOT constitutes error.

In step five of the ALJ's analysis, the ALJ may rely on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e). Vocational expert testimony should generally be consistent with the Dictionary of Occupational Titles (DOT). See Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions, SSR 00–4P (S.S.A Dec. 4, 2000). When conflicts arise, an ALJ must resolve conflicts between the testimony and the DOT "by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information." Id. In Moore, the Eighth Circuit explained:

> A [vocational expert] must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation. See Welsh v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014) (concluding that the ALJ had complied with SSR 00–4p because, in response to extensive questioning by the ALJ regarding inconsistencies, the VE offered evidence of her personal observations of the requirements of the proposed jobs and cited to a professional journal to support her recommendation). **Absent adequate rebuttal, however, [vocational expert] testimony that conflicts with the DOT "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform."** . . . The ALJ is not absolved of this duty merely because the VE responds "yes" when asked if her testimony is consistent with the DOT.

Moore, 769 F.3d at 990 (emphasis added) (citing Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014) (reversing and remanding because "the record does not reflect whether the [vocational expert] or the ALJ even recognized the possible conflict between the hypothetical" and jobs suggested)). In Moore, the vocational expert failed to address the claimant's limitations on

reaching when she recommended the job of "cafeteria attendant," which job is defined in the SCO as involving frequent reaching. The Eighth Circuit concluded that the vocational expert's affirmative response to whether her testimony was consistent with the DOT did not adequately explain the inconsistency, and remanded the case. Id. As the Kemp Court explained, "the ALJ has an affirmative responsibility to ask about any possible conflict between [vocational expert] evidence and the DOT [ ] and . . . SCO[ ] on the requirements of a job or occupation before relying on [vocational expert] evidence to support a determination of not disabled." Kemp, 743 F.3d at 633. See also Rouse v. Colvin, No. 4:15-CV-466-CEJ, 2016 WL 866087 (E.D. Mo. Mar. 7, 2016) (reversing an ALJ's decision because "the ALJ did not elicit any testimony from the vocational expert to resolve the apparent conflict . . . [thus,] the vocational expert's testimony was not substantial evidence that jobs existed in the national economy during plaintiff's coverage window that she could have performed").

While Kemp and Moore were cases that involved a limitation in direct conflict with the job requirements expressed in the DOT, the instant case involves limitations included in the claimant's RFC that are simply not mentioned by DOT and SCO descriptions. Therefore, it is less clear that there is an actual "conflict" between the vocational expert's testimony and the DOT/SCO. Here, the DOT and SCO descriptions for the occupations stated by the vocational expert are generally silent as to ladders, ropes, ramps, stairs, foot controls, exposure to sunlight or artificial light, and a sit/stand option every 30 minutes throughout the eight-hour workday. The DOT's silence on a given limitation does not normally create a conflict between a vocational expert's testimony and the DOT, and with regard to the ALJ's limitations regarding ladders, ropes, ramps, stairs, foot controls, and exposure to sunlight or artificial light, the Court is satisfied that the limitations, even if not explicitly mentioned in the DOT definitions of the

vocational expert's proffered occupations, do not create a conflict between the testimony and the DOT.

The sit/stand limitation asserted by the ALJ requires further analysis, however, because the jobs recommended by the vocational expert are explicitly sedentary in nature. A sedentary job:

> is defined as one that involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996). Thus, a sit/stand requirement is almost certainly in conflict with the presumed requirement in a sedentary job that the laborer will be sitting for the vast majority of the workday, and may not have the option to sit or stand at leisure.

A few post-Moore cases in this district have addressed conflicts between a vocational expert's testimony and the DOT related to a sit/stand option, and have found that a sit/stand requirement not addressed in the DOT does not create a conflict with vocational expert testimony as a matter of course. But those cases are distinguishable from the matter at bar; they either did not involve sedentary positions that presume sitting throughout the day, or they involved a vocational expert's offering an explanation that the sit/stand requirement does not conflict with DOT definitions. See Heilig v. Colvin, No. 4:14-CV-2102 NAB, 2016 WL 559220, at *3-4 (E.D. Mo. Feb. 12, 2016) (affirming ALJ's decision that a sit/stand requirement for light work did not conflict with DOT where vocational expert's "testimony provided a reasonable

explanation for the conflict"); <u>Albright v. Colvin</u>, No. 2:14-CV-97 HEA, 2016 WL 98169 (E.D. Mo. Jan. 8, 2016) (finding that if there was a conflict between the sit/stand requirement and light work, it was properly resolved by the ALJ); <u>McFarland v. Colvin</u>, No. 2:14-CV-42 TCM, 2015 WL 2383461 (E.D. Mo. May 19, 2015) (vocational expert's testimony about sit/stand option provided a sufficient reasonable explanation regarding potential conflict between DOT and testimony based on the vocational expert's experience).

The instant matter is distinguishable from each of these cases in at least two very important ways. First, as already mentioned, the jobs at issue here are sedentary in nature, meaning that as a default assumption, the person performing the job will be expected to sit for the duration, or near-duration, of the workday. This creates a de facto conflict between the ALJ's testimony and the DOT descriptions for these jobs.

Second, and perhaps even more importantly, the vocational expert did not testify live at the hearing; the ALJ here relied solely on interrogatories submitted to the vocational expert. In such a procedure, there is no opportunity for follow-up questions or discussion about the vocational expert's testimony. And despite being asked a follow-up interrogatory about whether her testimony differed from the DOT, the vocational expert failed to explain her opinion or any conflict with the DOT. In <u>McFarland</u>, by contrast, the vocational expert testified "that her experience as a rehabilitation counselor for twenty years informed her testimony that two of the three cited jobs, laundry worker and collator, allow for sitting and standing at will and the third, an office helper, allows for a worker to move about more freely." <u>McFarland</u>, 2015 WL 2383461 at *24. In <u>Heilig</u>, the vocational expert explained with regard to the positions she suggested that "there would likely be the ability to sit and stand in all three of those last positions I gave . . ." <u>Heilig</u>, 2016 WL 559220 at *4. And in <u>Albright</u>, the ALJ  "gave great time and

detail in the exploration of any possible conflict" with the DOT. Albright, 2016 WL 98169 at

*7-8. See also Reynolds v. Barnhart, 36 Fed. Appx. 575, 576 (8th Cir. June 14, 2002)

(unpublished) (affirming the ALJ's decision where the claimant had a sit/stand requirement

because "the vocational expert provided additional information about certain jobs listed in the

DOT, namely, whether those jobs allowed workers to alternate between sitting and standing. The

vocational expert's testimony did not contradict any information in the DOT; rather, it served as

a supplement to that information.").

No such explanation was present here. Thus, Moore appears to control. A sit/stand

option every 30 minutes throughout the workday is a significant limitation that conflicts with

DOT definitions for sedentary positions not mentioning such an accommodation or possibility.

As Moore and Kemp make clear, an ALJ fails to comply with step five of the disability analysis

if he relies on vocational expert testimony that conflicts with the DOT without asking the

vocational expert for explanation. Such unsupported testimony cannot constitute substantial

evidence of the existence of other available jobs in the economy. Here, the ALJ relied on

testimony from the vocational expert that was in conflict with the DOT, and the vocational

expert's cursory attestation that her testimony was not in conflict is no amelioration. Thus, the

ALJ lacked substantial evidence for his finding at step five of the analysis.

The Court also rejects the Commissioner's citation to Garrison and Harris. Garrison was

decided before the Eighth Circuit's decision in Moore. And in any case, Garrison is

distinguishable. There, the vocational expert testified live at the hearing, and the ALJ asked

specifically whether the testimony was consistent with the DOT "other than the sit, stand

option." Garrison, 2014 WL 2452954 at *7. As such, the vocational expert was aware of the

conflict between her testimony and the DOT, and it was fair to presume that the vocational

expert accounted for it in rendering her professional opinion regarding the jobs that the claimant could perform.  Here, where the vocational expert only answered interrogatories, there is no indication that she considered the inconsistency of the sit/stand requirement with the DOT, and the conflict is neither accounted for nor explained.

Harris was decided after Moore, but is nonetheless highly distinguishable.  In that case, the claimant argued that her assigned RFC failed to encapsulate all of her impairments, and that the hypothetical posed to the vocational expert was therefore inadequate.  The court found instead that "the restrictions . . . that were not incorporated in the RFC . . . were not credible." Harris, 2014 WL 5781205, at *8.  In the instant matter, the question is not whether the additional restrictions, such as the sit/stand limitation, were credible; indeed, the ALJ chose to include them in Stamper's RFC.  (Tr. 23.)  Instead, the question is whether the vocational expert offered erroneous testimony because the testimony did not comply with the DOT, and the vocational expert failed to explain any deviation.  Harris is inapposite to the case at bar.

At step five of the sequential evaluation process, the Commissioner has the burden of establishing that jobs exist in the economy that the claimant is capable of performing.  See, e.g., Kemp, 743 F.3d at 633.  Here, in attempting to meet that burden, the ALJ relied on testimony that conflicts with the DOT, and the vocational expert offered no explanation for the conflicting testimony.  Thus, the burden was not met.  See Montgomery v. Chater, 69 F.3d 273, 275–77 (8th Cir. 1995) (reversing based on conflict between the vocational expert's testimony and the DOT, and explaining that "[t]he [vocational expert's] task is to determine whether jobs exist for someone with the claimant's *precise* disabilities") (citation and internal quotation marks omitted).  Accordingly, the case will be remanded for additional determination of whether jobs exist in the economy that Stamper is capable of performing.

**VI.     Conclusion**

For the reasons discussed above, the Court finds that the Commissioner's decision is not supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and the matter is remanded for further proceedings.   A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of March, 2016.